ROBERTS, Justice.
This -is an appeal from a final decree requiring specific performance by the appellants of their part of a written agreement for the purchase and sale of certain real and personal property. At the time of making the contract, the appellants were the owners of a tourist court in St. Johns County, Florida; and the appellee owned a grocery business in Oswego, New York. The contract was, in effect, for an exchange between the parties of these properties. The tourist court was put into the deal at $30,000, and the grocery business, that is, the stock of merchandise and fixtures, at $20,000. The difference of $10,-000 was made up by the assumption' by the appellee of a $5,000 mortgage against the tourist court and a cash payment by appellee to the appellants of $5,000.
In connection with the sale of the stock and fixtures, the appellee agreed to lease to the appellants that part of the building occupied by the grocery business (which building was at that time also owned by appellee) for a period of ten years at a rental of $300 per month, with an optional ten-year extension of the lease at the same rental. The terms of the lease would require the first month of the first year and > the entire last year to be paid in advance; and, in order to relieve the appellants of depositing that amount of cash, the appel-lee agreed to accept a chattel mortgage against the grocery business.
The appellants signed the lease and took over possession of the grocery business on or 'about March 10, 1951, and attempted to operate it until March 31, 1951, or a period of approximately three weeks. At that time the keys were returned tó the agent of the appellee, the store closed, and the appellants returned to Florida. There was some question as to whether or not the tourist court had been technically delivered to the appellee. But, in any event, upon appellants’ returning to Florida, they re-opened the tourist court, reactivated its operation, and as far as they were concerned, called off the deal. Thereupon, this suit for specific performance of their agreement to convey to him the tourist court was instituted by the appellee.
The appellee alleged that he had done all that was required of him by the contract and was ready to accept the tourist court subject to the $5,000 mortgage. The appellants answered, alleging that the appel-lee had misrepresented to' them the stability and volume of the 'business; that the stock and fixtures had not been delivered to them free and clear of all indebtedness, and that the appellee had violated the Bulk Sales Law of the State of New York in the purported conveyance to them of the grocery business; that there were numerous outstanding obligations against the business and that demand had been made on the appellants by creditors of the business for payment; and that, although the ap-pellee had represented to them that said grocery store was a thriving and growing concern 'and enjoyed a large trade and patronage, that as a matter of truth and fact the store was in a run-down condition, had little trade or patronage, was deeply in debt, and the exact opposite of what it •had been represented to be by the appellee.
The appellants also alleged “That immediately upon the execution of the chattel mortgage mentioned in said Complaint the plaintiff [appellee] transferred title to the property in which said grocery store was located to his brother in order to defraud these defendants [appellants] and prevent, them from having any recourse against him for the debts which the plaintiff has failed to pay.”
■The cause was heard by a Special Examiner; and on the basis of the evidence taken by him and the depositions of other witnesses, the 'Chancellor entered his final decree finding the equities to be with the appellee and requiring the appellants to convey to the appellee the tourist court. From such decree, this appeal has been perfected.
There can be no doubt, from the evidence as adduced by the appellants, that the grocery business at the time of delivery was in a badly run-down and neglected *706 condition, and encumbered by a substantial amount of debt due the creditors of the store. It is also clear that the appellants were not advised by the appellee of the existence of these outstanding debts at the time the deal was made. It was not until the appellants took over the operation of the store that they became aware of the outstanding obligations. The appellee admitted that he had not complied with the Bulk Sales Law of the State of New York, Personal Property Law, McKinney’s Con-sol.Laws, c. 41, Section 44, the result being that the grocery stock and fixtures were liable for the outstanding debts against the store. It appears that the appellee agreed to off-set against the rent due him under the lease the amount of any bills which the appellants were required to pay to protect their interest in the grocery business; but it also appears that, immediately after the lease and the chattel mortgage were signed by the appellants, the appellee conveyed to his brother the 'building in which the grocery business was located and assigned to him the lease and the mortgage. Had the appellee retained ownership of the lease and chattel mortgage, he could perhaps extricate himself from his failure to deliver a clear title on the basis that he had protected the appellants against the hazard resulting from the dereliction on his part. However, when the appellee immediately after execution parted with ownership of the lease and mortgage, he placed that valuable right of off-set and protection beyond the reach of the appellants. Even though the assignment of the lease and mortgage and conveyance of the building appear very suspicious under the circumstances, the evidence fell short o'f proving that it was fraudulent 'and without consideration. But as far as the appellants were concerned, the end result was the same. The appellants had a right to expect that they would receive a clear and unencumbered title to the stock and fixtures ; and when the appellee failed to deliver such clear title and placed beyond the reach of appellants the privilege of paying the creditor’s liens off the property and off-setting such payments against the rent, he failed to perform his obligation; and because of such default, he cannot now invoke the aid of a court of equity.
It is further apparent from the record that the entire business had been operated in a loose manner; that the ap-pellee was unable to deliver to the appellants any accurate information as to his creditors or the amounts owed them, and that he did not in fact have or deliver to the appellants the substantial going business which he had represented to them as being worth $20,000. The existence of the indebtedness, the urgent demands of the creditors, the sale of appellee’s real estate, the assignment of the lease and chattel mortgage to appellee’s brother — all these came to the attention of the appellants shortly after they accepted the keys to the store. Being confronted, then, with the ultimate consequences of such default on the part of the appellee, these appellants sought to do what they could as quickly as possible to restore the parties to their original status, and called the deal off. While equity will not relieve a party from a bad bargain, it will not extend its arm to enforce performance of a contract where to do so would be harsh and inequitable under all the circumstances of the case. McCaskill Co. v. Dekle, 88 Fla. 285, 102 So. 252; Scott v. City of Venice, 123 Fla. 772, 167 So. 654. And, from what has been said before, it is clear that the circumstances in the instant case are not such as to justify the intervention of a court of equity.
Although the appellants were not the actors in this litigation, upon being brought into court they immediately invoked equitable principles to aid them in their difficulty. Having sought equity, they must do equity. For that reason we hold that the ends of justice will be best served by requiring the appellants to refund to the appellee the sum of $5,000 received and retained by them from the ■appellee. The appellee is entitled to> a lien against the tourist court 'for the purpose of collecting the same.
Accordingly, the decree of specific performance is reversed and the cause remanded with directions to the Chancellor to enter an appropriate decree requiring *707 the appellants to refund within a short day, to appellee the sum of $'5,000 with interest thereon and upon their failure to do so, that the appellee have a lien against the tourist court for same.
Reversed and remanded with directions.
HOBSON, C. J., and TERRELL, MATHEWS and DREW, JJ., concur.
THOMAS and SEBRING, JJ., not participating.